Odie **THOMPSON**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9206–CR–269.

Court of Appeals of Indiana, Second District.

May 18, 1993.

Kenneth T. Roberts, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

SHIELDS, Judge.

Odie Thompson appeals his conviction of murder,[1] a felony. We affirm.

## ISSUES

Thompson raises issues for our review which we reorder as:

1. Did the trial court err by denying Thompson's motion to suppress the statements he made to police after his arrest and the evidence seized during the search of his apartment?

2. Did the trial court err by admitting photographs of the crime scene?

---

1. *See* IC 35–42–1–1 (1988).

3. Did the trial court err by refusing to allow a defense witness to testify?

4. Was there sufficient evidence to convict Thompson?

5. Did the trial court err by sentencing Thompson to the presumptive term for murder?

## FACTS

In the early morning hours of July 28, 1990, Odie Thompson killed Roger T. Bell, an acquaintance with whom he had been drinking in Thompson's apartment earlier that evening. Thompson shot Bell in the head and dragged his body to the basement of Thompson's apartment building, where it was discovered the next day.

Thompson was tried by a jury, convicted of murder, and given the presumptive sentence of forty years. He appeals.

## DISCUSSION

### I.

Thompson first argues that the trial court improperly admitted statements Thompson made to police after he was arrested and improperly admitted items seized during the search of his apartment.

### A.

After Thompson was arrested, he gave two statements to the police.[2] He sought to exclude these statements on the ground that Police Detective Moore induced him to make the statements by telling him, "if I didn't cooperate with them and give them a statement I'd never see my family again." Record at 747.[3] He also asserted that before and during his statements and while the audio tape was not recording, he asked for and was denied an attorney.

Detective Moore testified that Thompson was advised of his right to counsel but never requested an attorney. He also denied telling Thompson that "he would never see his family again if he didn't tell [Moore] that he did it." Record at 370. Finally, the taped statements included Thompson's assertion that the statements were "given voluntarily and of [his] own free will," Record at 348, and that no "force, threats or promises" were made to induce him to make the statements. *Id.*

Before a confession is admitted into evidence, the State must prove beyond a reasonable doubt that the defendant knowingly and intelligently waived both his right to have an attorney and his right not to incriminate himself. *Coates v. State* (1989), Ind., 534 N.E.2d 1087, 1092; *O'Neill v. State* (1992), Ind.App., 597 N.E.2d 379, 384, *trans. denied.* Also, a confession which is procured by means of threats, physical abuse, or promises of lenient treatment cannot be admitted into evidence. *Smith v. State* (1989), Ind., 543 N.E.2d 634, 637; *O'Neill*, 597 N.E.2d at 385. In our review of the trial court's determination, we consider any uncontroverted evidence presented by the defendant, but where conflicting evidence exists, we are bound to view only that evidence which supports the trial court's determination that the confession was given voluntarily. *Smith*, 543 N.E.2d at 637; *O'Neill*, 597 N.E.2d at 385. If there is substantial evidence that the defendant gave the confession voluntarily, we will affirm. *O'Neill*, 597 N.E.2d at 385.

The evidence here is in conflict, and Detective Moore's testimony provides substantial evidence supporting the trial court's conclusion that Thompson voluntarily gave police two statements regarding the homicide. Given our standard of review, the trial court did not err in ruling on the voluntariness of Thompson's state-

---

**2.** Initially, Thompson told police that he and Bell were in Thompson's apartment with a third man, and the third man killed Bell. Thompson was able to give the police only a very general description of the third man. Later Thompson admitted killing Bell, although he claimed that the shooting was accidental.

**3.** Brenda Anderson, Thompson's fiancee and the woman with whom he was living, was also under arrest; his children were in Guardian Home. Brenda Anderson was arrested and charged with false reporting in connection with the homicide. She was held from August 13, 1990, until September 5, 1990, at which time the charge against her was dismissed.

ments. *See also Neal v. State* (1988), Ind., 522 N.E.2d 912, 913 (conflicting testimony is insufficient to show defendant's confession was induced).

### B.

■ On July 28, 1990, the day Bell's body was discovered, apartment # 170 in the Crystal Glen Apartments, 3307 East 39th Street, Indianapolis, was leased to Thompson and Anderson. Detective Moore testified that the management of the apartment building advised him that Thompson had very recently vacated apartment # 170; accordingly, he accompanied Annette Fields, the assistant manager of the apartment complex, when she entered the apartment.[4] At that time he observed spots of what appeared to be blood on the carpet and walls. Based on this information, Detective Moore obtained a warrant on July 31, 1990, searched the apartment, and seized a bloodied section of carpet and the underlying pad, blood splatters from the walls, a bloodied mop and sweeper, and various cleaning agents. Detective Moore also photographed and videotaped the interior of the apartment. Thompson was arrested on August 15, 1990.

■ Thompson argues that the warrant was invalid on its face because the omission of a specific list of the items to be searched for and seized gave the executing officers unbridled discretion. *See Hester v. State* (1990), Ind.App., 551 N.E.2d 1187, 1190 (A search warrant which gives the executing officer discretion as to the items to search for and seize is invalid.).

The subject warrant describes the property to be searched for and seized as the building and apartment where Thompson lived. However, it is apparent that this description is a typographical error. The affidavit in support of the search warrant, affixed to and incorporated in the search warrant, enumerates items which Detective Moore sought to seize: hair fibers, blood, guns, personal belongings of victim Roger Thomas Bell, and blanket fibers. Reading the warrant and the incorporated affidavit together, the specific list of items contained in the affidavit circumscribed the executing officer's discretion. Thus, the trial court properly determined that the warrant was not invalid on its face. *See also Clifford v. State* (1985), Ind., 474 N.E.2d 963, 970 (typographical error in search warrant concerning date of issuance did not render warrant defective).

■ Thompson also argues the warrant was defective because the affidavit fails to specify the category of property which was to be searched for and seized. IC 35–33–5–2(a) requires only that the affidavit describe the "house or place to be searched and the things to be searched for, ... alleging substantially the offense in relation thereto...." A perusal of the affidavit reveals the place to be searched, the items to be searched for, and the statement that these items "pertain to [Bell's] homicide that occurred [on those premises]." Record at 65.

Also without merit is Thompson's argument that the affidavit affixed to the search warrant is overbroad. The general request for a "Search Warrant to recover any and all evidence, which pertains to the Homicide" is limited by the specific description of the property to be searched for as "Hair Fibers, Blood, Guns, Personal belongings of victim ..., [and] Blanket Fi-

---

4. The State initially asserts that Thompson lacks standing to challenge the warrant because he had vacated the apartment before the police entered it, citing *Criss v. State* (1987), Ind., 512 N.E.2d 858, for support. In *Criss,* the apartment entered by the police was empty, except for some trash, and the rent was past due. Our supreme court found the defendant had abandoned the apartment and had no reasonable expectation of privacy. *Id.* at 859–60.

In the present case, Detective Moore testified that the management of Crystal Glen Apartments told him that the apartment had been vacated. Upon entering the apartment Detective Moore did not see any clothing, although furniture and household goods were still in the apartment. Detective Moore then attempted to locate Brenda Anderson through her place of employment and was unable to do so. However, Annette Fields testified that Thompson and Anderson had a valid lease for the apartment and that the apartment was vacated on November 3, 1990. Thus, these facts differ significantly from those in *Criss* and we decline to extend the holding of that case to the circumstances before us.

bers." Record at 752. The items seized were properly admitted into evidence.

## II.

■ Thompson next argues that the trial court erred by admitting the State's Exhibits 1, 5, and 7 because they were cumulative to two other photographs of the crime scene.

■ Although photographs of a deceased victim are gruesome by their very nature, they are properly admitted into evidence for the purpose of showing the nature and extent of the wounds, to illustrate the scene of the crime, and to prove the cause of death. *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 490; *Crane v. State* (1978), 269 Ind. 299, 303, 380 N.E.2d 89, 92. Pictures are relevant to prove the cause of death even if it has been proven through testimony of other State's witnesses. *Wagner*, 474 N.E.2d at 490. The trial court's decision to admit photographs into evidence will be reversed only upon a showing of an abuse of discretion. *Id.*

The photographs, although somewhat repetitive and cumulative, were relevant to illustrate the scene of the crime and the wounds which Bell received. Thompson has failed to show that the trial court abused its discretion by admitting these photographs; thus there is no error.

## III.

■ Thompson argues that the trial court erred when it refused to allow Armelda Thomas, a defense witness, to testify that she knew Bell and his wife, and that two days prior to his death Bell told her that he believed his wife was "trying to get somebody to do something to" him. Record at 605. Thompson argues that this testimony was admissible to show Bell's state of mind prior to his death, and that the testimony made Bell's wife a viable suspect.[5]

■ If legally relevant, statements offered to show the victim's state of mind prior to the crime are admissible. *Lock v. State* (1991), Ind., 567 N.E.2d 1155, 1159, cert. denied, — U.S. —, 112 S.Ct. 1686, 118 L.Ed.2d 400.[6] The question here is whether the victim's state of mind is relevant. We accord the trial court discretion in ruling on the relevancy of evidence. *Hunter v. State* (1991), Ind., 578 N.E.2d 353, 357. Thomas's testimony, if it had been allowed, would have revealed that the victim may have felt threatened by or been in fear of his estranged wife. Even if this was Bell's state of mind before his death, it does not relate to his relationship with Thompson or to the circumstances surrounding his death, and thus, *at most*, was only very marginally relevant. The trial court did not abuse its discretion in excluding Thomas's testimony.[7]

---

5. In response to questions propounded to Thomas by the State during Thompson's offer to prove, Thomas agreed that the "something" could have meant either a divorce or a restraining order. Thompson also argues that Thomas's testimony would have corroborated the testimony of Deborah Cook, Bell's sister, who went to Thompson's home after her brother's death and spoke to Thompson. According to her testimony, she asked Thompson if he thought a "love triangle" had been involved in the death, and asked another man if Bell's estranged wife lived next door to Thompson. This testimony does not implicate Bell's wife in his death, and thus Thomas's testimony could not have corroborated any evidence of record.

6. In *Lock*, our supreme court did not decide the legal relevancy of the victim's state of mind because the evidence was properly admitted to serve another purpose.

7. Thompson cites *Dunaway v. State* (1982), Ind., 440 N.E.2d 682, and *Drummond v. State* (1984), Ind., 467 N.E.2d 742, as holding that testimony regarding a murder victim's statements, offered to show the victim's state of mind prior to the crime and not for the matters contained therein, is admissible. However, these cases deal with either the state of mind of the defendant or the victim's state of mind regarding the defendant, and not the victim's state of mind regarding a third party, as is the case before us. *Dunaway*, 440 N.E.2d at 686 (murder victim's statements made evening of the crime and testified to by her mother were admissible to show fearful state of mind which would explain her later action); *Drummond*, 467 N.E.2d at 747 (third party testimony regarding prior threats made by defendant to victim was admissible to prove defendant's state of mind); *see also Byrd v. State* (1991), Ind.App., 579 N.E.2d 457, 463 (murder victim's statement and action made prior to crime and testified to by her mother were ad-

■■ Neither did the trial court err in excluding the evidence on the ground it was relevant to establish the crime was committed by a third party. The standard for introducing evidence showing a third party committed the charged crime is that "such evidence must do more than cast suspicion or raise a conjectural inference that a third party committed the crime; it must directly connect the third party to the crime charged." *Burdine v. State* (1987), Ind., 515 N.E.2d 1085, 1094. Thomas's testimony does not satisfy the standard articulated in *Burdine*. This evidence was properly excluded by the trial court.

### IV.

■ Thompson claims the evidence was insufficient to support the jury's verdict.

■■ When we review a sufficiency claim, we consider only the evidence most favorable to the verdict along with all logical inferences drawn therefrom. *Burdine*, 515 N.E.2d at 1087. We do not reweigh the evidence nor judge the credibility of the witnesses, and do not disturb a verdict when there is substantial probative evidence from which the trier of fact could reasonably infer guilt beyond a reasonable doubt. *Id.*

■ Initially, Thompson contends that Donald Covington's identification of him as the person Covington saw with Bell is "far from conclusive" because Covington was extremely intoxicated the night of the murder and, at trial, Covington did not "positively identify the picture of the decedent as the person who was drinking with [Thompson]." Appellant's Brief at 36. However, evidence of Covington's condition on the night in question and the quality of his identification of the photograph in question was before the jury and it was the jury's prerogative to determine the credibility of his testimony and the weight it should be accorded. *Williams v. State*

(1988), Ind., 520 N.E.2d 1261, 1262. We will not disturb the jury's determination.

Thompson next contends that the State did not produce any physical evidence linking him to the crime; that is, none of Bell's personal effects were found in Thompson's possession and the murder weapon was never found. Such evidence is not required. Indeed, in his post-arrest statement, Thompson told police that he had instructed a friend of his to dispose of the murder weapon.

■ Thompson also complains that the blood samples found near the crime scene which were similar to Bell's blood do not establish he perpetrated the crime. Although he is correct that the matching blood samples do not establish that Thompson killed Bell, the blood discovered in Thompson's apartment is of considerable probative value. Bell had type AB blood, and Patricia Hamby, a serologist, testified that only 4% of the population has that blood type. Splattered in the apartment and concentrated in front of the sofa was a significant amount of AB blood. From this evidence, the jury could reasonably infer that Bell was murdered in Thompson's apartment.[8]

■ Finally, Thompson's claim the shooting was accidental was negated by the evidence that Bell was shot as he sat on the floor of Thompson's apartment, from a distance of at least two or three feet, and at an angle that is inconsistent with an accidental shooting.

There is sufficient evidence in the record to sustain Thompson's conviction.

### V.

■ Finally, Thompson contends that in imposing his sentence the trial court failed to identify and consider various mitigating circumstances, including the facts that an extended sentence would cause undue hardship on his children, Thompson had a reputation for good character, at the time

---

missible to show victim's fearful state of mind and an existing conflict between victim and defendant).

**8.** In addition, there were bloody drag marks from outside the door of Thompson's apartment, down two flights of stairs, and into the furnace room of the building, where Bell's body was found.

of the crime Thompson was under stress due to an illness, and that he had a steady work history and a minimal criminal history.

 When the trial court imposes the presumptive sentence prescribed by the criminal statute, as the trial court did here, we presume compliance with IC 35–38–1–7 (1988), regardless of whether the record includes the trial court's specific enumeration of any aggravating and mitigating factors. *Stroud v. State* (1988), Ind., 517 N.E.2d 780, 783. Nevertheless, during sentencing, the trial court stated that it considered the statutory circumstances and factors, and found both aggravating and mitigating circumstances which "in this case balance each other out." Record at 828–29. This statement suggests that the court considered the testimony regarding mitigating evidence and believed the mitigating evidence was insufficient to offset the aggravating factors. The trial court did not err in omitting specific references to the mitigating factors now claimed by Thompson. *Johnson v. State* (1991), Ind., 580 N.E.2d 959, 961.

Judgment affirmed.

BAKER and SULLIVAN, JJ., concur.