**Brad C. ANGLETON,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 49S00–9411–CR–1049.**

Supreme Court of Indiana.

Oct. 9, 1997.

Rehearing Denied Feb. 17, 1998.

Karon A. Perkins, Columbus, for Defendant–Appellant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Plaintiff–Appellee.

SELBY, Justice.

On April 27, 1994, a jury convicted defendant, Brad C. Angleton, of the murder of his

wife, Cheryl Angleton. The court sentenced him to 55 years. In this direct appeal, he raises the following issues: 1) Did the trial court err by allowing admission of certain statements made by Cheryl to acquaintances, friends, and family? 2) Did the trial court err by allowing admission of evidence of defendant's negative character traits and prior bad acts? 3) Did the trial court err by allowing two witnesses to state personal opinions? 4) Did the trial court err by allowing the prosecutor to ask objectionable questions? 5) Is the evidence insufficient to support the conviction? 6) Did the trial court properly sentence defendant? We answer each question in the negative and affirm defendant's conviction but remand for a new sentencing hearing.

FACTS

The essential nature of the evidence presented at trial is circumstantial. The facts most favorable to the conviction indicate that during the early morning hours of April 8, 1993, defendant shot his wife in the head while she was sleeping.

A neighbor testified that at around 2:00 a.m. on the morning of April 8, he was parking his car close by and heard three shots coming from the direction of the Angleton's apartment. Defendant was at home at this time.

The State's theory at trial was that defendant killed his wife because they were having marital difficulties and because he could profit from her death by collecting life insurance. Several witnesses testified regarding Cheryl's unhappiness in the marriage and her intention to leave defendant. Although he denied having marital difficulties, defendant admitted that he had not been completely truthful with Cheryl about his debts and obligations prior to the marriage. Several months after their wedding, in September 1989, defendant filed for bankruptcy. The evidence also showed that in June of 1992, defendant acquired insurance policies for more than $300,000 of coverage insuring Cheryl's life, for which he was the named beneficiary.

Angleton's defense was that a burglar killed his wife. Trial testimony indicates that when defendant arrived home from work at around 5:00 on the evening of April 8, he reported to the police that his home had been burglarized. Cheryl Angleton was not present at the time of the report. Defendant told the investigating officer, Officer Richard Utley, that two cameras and fifty dollars cash were missing. At trial, Officer Utley testified that in his opinion the Angleton's home was too neat to have been the actual scene of a burglary.

Cheryl had not returned home, after Angleton reported the burglary, and so defendant left her a note and went to a Comfort Inn. In the several hours thereafter, defendant did nothing to try to communicate with his wife or warn her that their apartment had been burglarized. He did not phone Cheryl at home or at her parents' home or try to locate her at all that evening. Defendant claims that he did not know how to place an outgoing call from the hotel room, although evidence shows that the hotel phones came equipped with directions.

The next morning defendant returned home and called to speak with Officer Utley. He then called Utley back around 15 minutes later explaining that he had found Cheryl's purse and wanted to make a missing person report. He went to the station to make this report. While there, he told an officer he believed Cheryl might be dead. When the officer asked why, defendant simply turned away.

Around noon, defendant telephoned the police and reported that he had found Cheryl's body and believed she was dead. Defendant claims he noticed the cat behaving strangely in front of the kitchen closet and that when he investigated he found Cheryl's nude body wrapped in a sheet. Officer Rizwan Khan reported to the scene. He found at first no evidence in the house that a homicide had occurred there. The apartment was in order and appeared to be quite clean. Upon closer examination, however, he discovered that there was blood on the bed mattress in the master bedroom, blood spatters on the wall, and blood on the floor. Magazines had been placed over the blood spot on the floor.

Forensic evidence showed that Cheryl was shot once between 24 to 48 hours before her

body was found. The gun was around a foot from her head when she was shot. The type of weapon and bullet were not identifiable, and there was no remaining evidence of any other shots having been fired.

DISCUSSION

Several witnesses testified as to Cheryl's temperament and fears at around the time of her death and to difficulties in her marital relationship. Cheryl's mother, Shirley Adkins, testified to the contents of a note which Cheryl had, shortly before her death, left at Adkins' house among photographs of defendant's family. The note read, "I have tried so hard, but things just aren't working out." (R. at 1383, 1400.)

Cheryl's cousin, Kimberly Jones, testified to conversations she and Cheryl had while Cheryl was visiting her in West Virginia. Jones testified that Cheryl told her that she and defendant were disagreeing and that she wanted a baby. Jones also testified that Cheryl told her that defendant was verbally abusive.

Sherri Lunn, a friend of Cheryl's from her prior place of employment, testified similarly to Jones. Lunn testified that Cheryl told her she intended to divorce defendant if he would not give her a child. She also testified that Cheryl had told defendant that she intended to divorce him.

▉ Furthermore, Toni Leisure, a dog-breeder who sells Rottweilers for personal protection, testified that she had two phone conversations with Cheryl shortly before her death. Leisure had never met Cheryl, but Cheryl telephoned Leisure because she wished to purchase a dog from her. Cheryl told Leisure that "she was soon to be alone, soon to be on her own." (R. at 900.) Leisure further testified that Cheryl "had also thought about buying a gun," (R. at 994), and that Cheryl stated, "I want to make sure I wake up in the morning" (R. at 995–96). All of the conversations testified to by Leisure, Lunn, and Jones occurred within six months of Cheryl's death.

I. Telephone Conversation with Toni Leisure

Defendant challenged the admissibility of Leisure's testimony both before trial by motion in limine and at trial. Defendant claims that Leisure's testimony about a caller named Cheryl Angleton, who telephoned in order to arrange for the purchase of a Rottweiler, should not have been admitted into evidence. The first ground upon which he challenges the testimony is for a lack of foundation establishing that the caller was Cheryl. Defendant contends that, because the information conveyed by the caller to Leisure contained facts about Cheryl both, true and false, the information did not establish it was Cheryl who phoned Leisure.

▉ For evidence of a telephone conversation to be admitted, the identity of the participants must be established. *King v. State*, 560 N.E.2d 491, 494 (Ind.1990). Identity may be established through voice identification where the receiver is familiar with the caller's voice. *Ashley v. State*, 493 N.E.2d 768, 775 (Ind.1986). Identity may also be established through circumstantial evidence where the caller gives sufficient specific information which only she would know. *Lock v. State*, 567 N.E.2d 1155, 1159 (Ind.1991); *Reed v. State*, 491 N.E.2d 182, 186 (Ind.1986). Examples of such information include name, phone number, address, and social security number. *Id.* at 186. "The identity of the caller need not be proved beyond a reasonable doubt." *King*, 560 N.E.2d at 494–95. Conflicts in information establishing identity go to the weight and not the admissibility of the evidence. *Id.* at 495.

Leisure learned that the caller's name was Cheryl Angleton, that she lived in an apartment, drove a small car, and was a part-time student. She also noted that the caller spoke in a soft voice. This was sufficient circumstantial evidence to establish the caller as Cheryl. *Lock*, 567 N.E.2d at 1159; *Reed*, 491 N.E.2d at 186. While the caller also professed to be single and not to own a cat, facts which were untrue of Cheryl, these conflicts go to the weight, not the admissibility of the evidence. *King*, 560 N.E.2d at 494–95.

II. Hearsay Objections

In the motion in limine and at trial, defendant challenged Leisure's, Lunn's, and Jones'

testimony about Cheryl's statements, in conversation with them, as irrelevant hearsay. At trial, he also challenged Adkins' testimony as hearsay. The trial court ruled the testimony of Leisure, Lunn, Jones, and Adkins admissible as relevant to Cheryl's state of mind. Although defendant broadly challenges all of the testimony as inadmissable hearsay, we separately examine the type and character of the testimony from each of these witnesses. We hold that some of the challenged testimony is not hearsay and some is hearsay subject to an exception.

"We accord the trial court discretion in ruling on the relevancy of evidence." *Thompson v. State*, 613 N.E.2d 461, 466 (Ind. Ct.App.1993); *Hunter v. State*, 578 N.E.2d 353 (Ind.1991). Furthermore, "We reverse a trial court's hearsay ruling only if the court has abused its discretion.... We will sustain the trial court if it can be done on any legal ground apparent in the record." *Light v. State*, 547 N.E.2d 1073, 1081 (Ind.1989) (citations omitted).

■ Only relevant evidence is admissible. Ind.Evidence Rule 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind.Evidence Rule 401. A victim's state of mind is relevant where it has been put in issue by the defendant. *Taylor v. State*, 659 N.E.2d 535, 543 (Ind.1995). In this case, defendant put the victim's state of mind at issue by portraying her as a happily married wife who peacefully spent her time writing love notes and poems for her husband.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind.Evidence Rule 801. Hearsay is not admissible in evidence unless a recognized exception applies. Evid.R. 802; *Taylor*, 659 N.E.2d at 544; *C.T.S. Corp. v. Schoulton*, 270 Ind. 34, 383 N.E.2d 293 (1978). These exceptions are enumerated by Indiana Rule of Evidence 803 and among these is the exception for then existing state of mind, which is applicable to some of the challenged testimony. Evid.R.

803(3); *Ross v. State*, 676 N.E.2d 339, 345 (Ind.1996).

Statements not admitted to prove the truth of the matter do not run afoul of the hearsay rule—they are not hearsay. Evid.R. 802. If a statement, the substantive content of which does not directly assert the declarant's state of mind, is admitted to show only the declarant's state of mind, it is not hearsay. *Dunaway v. State*, 440 N.E.2d 682, 686 (Ind.1982); *Byrd v. State*, 579 N.E.2d 457, 463 (Ind.Ct. App.1991), *aff'd in part, vacated in part on other grounds*, 593 N.E.2d 1183 (Ind.1992). Such a statement is admissible, *Davis v. State*, 598 N.E.2d 1041, 1049 (Ind.1992), and an admonishment to the jury not to use the statement for its truth is appropriate, *see Bacher v. State*, 686 N.E.2d 791, 797–798 (Ind.1997); *Lock v. State*, 567 N.E.2d at 1155. The majority of the challenged testimony falls into this category, statements offered for the non-hearsay purpose of showing the victim's state of mind.

**A. Toni Leisure's testimony**

■ Leisure's testimony, recounting telephone conversations between herself and Cheryl regarding buying a dog for personal protection, contained both hearsay and non-hearsay statements.

Cheryl told Leisure that "she was soon to be alone, soon to be on her own," (R. at 990), indicating that she planned to live by herself in the near future. Leisure's testimony recounting this statement was admitted to show the truth of the matter, Cheryl's intention. As such it was hearsay; but it was clearly admissible under the state of mind exception to the hearsay rule because the statement expressed Cheryl's state of mind at that time, that she intended to leave her situation.

■ The rest of the statements—about wanting a gun and making sure she awoke in the morning—also portrayed Cheryl's state of mind. These statements, however, were used for non-hearsay purposes. These statements were admitted to show that Cheryl was fearful and unhappy, as opposed to the happy person depicted in defendant's open-

ing argument. They were not admitted to show that Cheryl, indeed, wanted a gun or wanted to make sure she woke up in the morning.[1]

Cheryl's statements of intent to live on her own and her expressions of fear were relevant. Defendant's counsel, in opening arguments, painted a picture of Cheryl and defendant as a happy, loving couple. He described the many hours they spent together quietly watching television and the love notes and other shows of affection constantly exchanged between them. Cheryl's statements to Toni Leisure had a likelihood of contradicting this picture of matrimonial bliss and, as such, shed light on an issue in the case.[2] We find no abuse of discretion in the admission of Toni Leisure's relevant testimony—one statement as hearsay which fell under the then existing mental state exception and the others for non-hearsay purposes.

B. Shirley Adkins' testimony

Shirley Adkins, Cheryl's mother, testified about a note that Cheryl had left at her house. This note stated, "I have tried so hard and it's just not working." (R. at 1383, 1400.) This statement was not offered for the truth of the matter, that Cheryl had tried hard or that it was not working. Rather, it was offered for non-hearsay purposes, to show Cheryl's unhappy state of mind. In this capacity it was not hearsay.[3]

Furthermore, Adkins' testimony about the note was relevant to contest the claim that

defendant and Cheryl were happily married. While the note did not specify that Cheryl was upset with her marriage, it did emanate a feeling of despair. It was within the judge's discretion to determine that this note of marginal relevance on the issue of Cheryl's happiness with her marriage was admissible.

C. Kimberly Jones' testimony

Kimberly Jones, Cheryl's cousin, testified that Cheryl told her defendant was verbally abusive. Cheryl said that they were disagreeing and that she wanted a baby. These statements were not hearsay because they were not offered for the truth of the matter. Rather they were admitted for non-hearsay purposes, to show Cheryl's state of mind, unhappiness with her marriage.

Jones' testimony was, like that of Lunn and Leisure, relevant to contest defendant's opening statement. It showed that Cheryl was not happily married as asserted by defendant's counsel. As relevant non-hearsay, the statements were admissible.

D. Sherri Lunn's testimony

As discussed above, Cheryl's friend, Sherri Lunn, testified at trial to conversations she had with Cheryl. Lunn's testimony, like Toni Leisure's, consisted of both hearsay and non-hearsay statements. Lunn testified that Cheryl told her she intended to divorce defendant if he would not give her a child. This statement was hearsay, offered for the truth of the matter. It also clearly

1. Because these statements were not admitted for the truth of the matter, defendant was entitled to an admonishment to the jury not to use the statements for the truth of the matter asserted. Defendant, however, did not request such an admonishment, and the court is not required to issue one *sua sponte*. See *Lock*, 567 N.E.2d at 1160.

2. Defendant argues that Cheryl may have been afraid of anyone, not necessarily him, and so the phone conversation casts no light on his relationship with Cheryl or the circumstances surrounding her death. Defendant contends that this testimony is analogous to that in *Thompson* and, therefore, the trial court should have ruled that it was irrelevant. *Thompson v. State*, 613 N.E.2d 461 (Ind.Ct.App.1993). In *Thompson*, defendant offered hearsay statements by the victim that his wife was "trying to get someone to

do something to him." The killing of the victim by defendant, and not by the victim's wife, was the issue. The court found the victim's state of mind, fear of his wife, was not relevant to the circumstances surrounding his death or his relationship with defendant Thompson. Conversely, the marital relationship between defendant and Cheryl was central to this case. Cheryl's statements do constitute some evidence that she was afraid of whomever she was living with and planning to move out on her own. Because this evidence was relevant, the trial court could correctly allow it.

3. Again, defendant was entitled to an admonishment that the statement should only be used for its non-hearsay purpose as evidence of state of mind. Defendant, however, did not request such admonishment.

fell under the state of mind exception, as it was a statement of Cheryl's then existing intention.

■ Lunn also testified that Cheryl had told defendant that she intended to divorce him. This statement was offered not for the truth of the matter but for non-hearsay purposes, to show state of mind. The statement was simply offered to demonstrate that Cheryl was not happy with her marriage. Thus, it was not hearsay at all.

■ Lunn's testimony showed Cheryl's intent to divorce defendant and, as such a statement of intent, it was relevant. *Taylor*, 659 N.E.2d at 543. Her testimony was also relevant to contest defendant's opening statement that Cheryl was happily married. Lunn's relevant testimony, like that of Leisure, was admissible—one statement as hearsay which fell under the then existing mental state exception and the others for their non-hearsay purposes.

## III. Prejudice

Defendant briefly argues that, even if relevant, the prejudicial effect of Leisure's, Adkins', Jones', and Lunn's testimony outweighs its probative value. Defendant does not contend that this objection was raised at trial, and no objection clearly appears in the record. Thus, defendant waived this issue for appeal. Ind.Evidence Rule 103(a)(1);[4] *see United States v. Wilson*, 966 F.2d 243, 246 (7th Cir.1992).

**4.** Indiana Evidence Rule 103(a) provides: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and (1) ... In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context;"

**5.** The conduct which defendant contests consists of ten different pieces of testimony: 1) defendant's testimony that he filed bankruptcy, 2) Ann Coughlin's testimony that defendant continued to buy expensive items while in debt, 3) Elizabeth Maudlin's testimony that defendant bought Cheryl expensive gifts, 4) Garrett Dick's testimony that Cheryl could not trust defendant, 5) Sherrie

## IV. Character Evidence

Defendant claims, for the first time in this appeal, that the trial court erroneously admitted evidence of prior uncharged misconduct.[5] Defendant did not, however, object at trial to any of this evidence on the basis of Indiana Evidence Rule 404(b), which prohibits evidence of prior uncharged misconduct to prove the character of a person in order to show action in conformity therewith, or on the basis of undue prejudice.[6] Defendant, thereby, waived this argument for appeal. Evid.R. 103(a)(1); *Davis v. State*, 598 N.E.2d 1041, 1048 (Ind.1992).

Defendant also claims that the State improperly inquired into specific acts of misconduct on cross-examination. *See* Ind.Evidence Rule 608(b). Again, during his cross-examination, defendant made no objection that the State was improperly inquiring into a specific uncharged act of misconduct. He, therefore, waived any such claim for appeal. Evid.R. 103(a)(1).

## V. Opinion testimony

■ Defendant argues that the trial court erroneously allowed two witnesses to give inadmissable opinion testimony. First, defendant argues that Ann Coughlin gave inadmissable opinions regarding defendant's feelings toward herself and Cheryl. Counsel failed, however, to object to this testimony, and defendant has thereby waived the issue for appeal. Evid.R. 103(a)(1). Second, defendant argues that Officer Richard Utley improperly stated, "I do not believe a burglary occurred there [at the Angletons'], sir."

Lunn's testimony that defendant refused to have a child and would not let Cheryl socialize with Lunn, 6) Kimberly Jones' testimony that defendant did not want to have children, 7) Maudlin's testimony that defendant's and Cheryl's relationship was "fast," 8) Coughlin's testimony that defendant had asked her to marry him on the second or third date and would marry anyone, 9) Jones' testimony that defendant verbally abused Cheryl, and 10) Coughlin's testimony that defendant did not love Cheryl and spoke disparagingly of her.

**6.** Defendant did object to some of the statements on hearsay and/or relevancy grounds. Any challenge based on these objections has been addressed above in section I.

(R. at 1044.) Defendant properly objected to this testimony at trial. Defendant argues that because Officer Utley admitted there is no standard burglary, his opinion testimony could only be conjecture and not helpful to the jury. He further argues that, because the statement contradicted defendant's testimony that a burglary took place, it was a statement about the truthfulness of defendant's testimony. We find that the trial court properly admitted Officer Utley's testimony.

Indiana Evidence Rule 701 states,

If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Ind.Evidence Rule 701. "The determination of whether a witness is qualified to give an opinion is within the trial court's discretion." *Kent v. State*, 675 N.E.2d 332, 338 (Ind.1996).

Clearly, Officer Utley's testimony was rationally based on his perception. During his eleven years as a police officer he had investigated hundreds of burglaries. Officer Utley also observed the state of defendant's home when he reported to the scene to investigate the alleged burglary on April 8, 1993. He testified that the home was "awfully neat for a burglar to have been in" and that items he would expect to be taken, such as a television and microwave, were present. (R. at 1028, 1038–39.) Thus, his opinion was rationally based on his perception of various burglaries and the state of the Angleton home on April 8, 1993.

Furthermore, Officer Utley's testimony was helpful to the clear determination of a fact in issue. Obviously, whether there was a burglary was an important factual issue for the jury to decide. While Officer Utley did testify that there is no standard burglary, this testimony did not make his opinion unhelpful personal conjecture. Rather, because Officer Utley could not describe a standard burglary to the jury, they had no comparative example to aid them in determining whether the alleged burglary was an actual burglary. The inability to easily describe a standard burglary made Officer Utley's opinion testimony, based on a comparison of this burglary to numerous others he had investigated, even more helpful to the jury. Clearly, the trial court did not abuse its discretion by ruling that Officer Utley's opinion was admissible under Rule 701.

■ Defendant argues further, however, that the opinion is inadmissable under Indiana Evidence Rule 704(b). Rule 704(b) states, "Witnesses may not testify to opinions concerning . . . the truth or falsity of allegations; whether a witness has testified truthfully. . . ." Ind.Evidence Rule 704(b). No witness, whether lay or expert, is competent to testify that another witness is or is not telling the truth. *Shepherd v. State*, 538 N.E.2d 242, 243 (Ind.1989).

Officer Utley did not make a statement that defendant had testified untruthfully or that an allegation was untrue. Rather, Officer Utley simply stated his opinion as to whether a burglary occurred. The contradiction between this opinion and other evidence did not turn the statement into an attack on the truthfulness of any other statements. Thus, the trial court made no error by admitting Officer Utley's opinion testimony.

## VI. Prosecutorial Misconduct

■ Defendant argues that the Court allowed the prosecutor to engage in misconduct by asking questions of Toni Leisure, the dog-breeder, which circumvented an earlier court ruling.

During direct examination, Leisure explained why she recommended a dog, rather than a gun, to Cheryl. Leisure stated, "This woman [Cheryl] was . . ." and defendant objected because Leisure was about to offer an opinion as to Cheryl's state of mind. That Leisure was about to say "afraid" or "fearful" was clear from her testimony during the State's offer to prove. (R. at 943.) The court ruled that Leisure could not testify as to her opinion of another's state of mind, only to the facts underlying that opinion. *See Weaver v. State*, 643 N.E.2d 342, 345 (Ind. 1994).

Then during cross-examination defendant's counsel inquired of Leisure, "She ever give you any indication of what she was afraid of?" (R. at 1005.) He also inquired about Leisure's grand jury testimony.

On re-direct the prosecutor asked Leisure, "Mr. Zahn [defendant's counsel] just asked you a little bit earlier about whether or not this person that identified herself to you as Cheryl Angleton expressed any fear of anyone, I believe. Isn't that what he asked you?" (R. at 1012.) Defendant's counsel then objected to the misstatement of his question, and the Court sustained the objection. Then the prosecutor asked, "In fact, in your words, wasn't she scared and terrified?" (R. at 1013.) Defendant's counsel objected because the words were not elicited on direct or cross and because his earlier objection to such opinions had been sustained. Defendant's counsel also asked the court to strike the question and admonish the jury. The court ruled that Leisure had not used those words on cross and sustained the objection, but failed to strike the question and specifically admonish the jury. The prosecutor argued that Leisure had made that statement in the grand jury testimony, which defendant's counsel had inquired about on cross, but the court ruled otherwise and continued to sustain the objection.

Defendant argues that the prosecutor deliberately violated the judge's ruling that Leisure could not offer opinions as to Cheryl's state of mind by asking the further questions during cross-examination. Defendant also claims that the judge erred by failing to strike the question and admonish the jury when so requested. Defendant argues that the prosecutor's actions and the court's failure to admonish the jury placed him in grave peril and constitute reversible error. We find no reversible error here.

 A two part test determines whether prosecutorial misconduct is reversible error: "1) whether the prosecutor engaged in misconduct and 2) whether the alleged misconduct placed the defendant in a position of grave peril or evinced a deliberate attempt to improperly prejudice the defendant." *Bellmore v. State*, 602 N.E.2d 111, 120 (Ind. 1992). "The gravity of the peril is deter-

mined by considering the probable persuasive effect of the misconduct on the jury's decision, rather than the degree of the impropriety of the conduct." *Willoughby v. State*, 660 N.E.2d 570, 582 (Ind.1996). "It has long been held by this Court that when an isolated instance of misconduct does not establish grave peril, repeated instances may evidence a deliberate attempt to improperly prejudice the defendant and result in reversal." *Kent*, 675 N.E.2d at 337.

We do not find that the prosecutor's questions amounted to misconduct. The prosecutor only asked these questions on re-direct after defendant's counsel had asked if Leisure knew what Cheryl "was afraid of" and had inquired about Leisure's grand jury testimony. The prosecutor reasonably believed these cross-examination questions opened the door to his questions. The prosecutor's slip of tongue of asking about a "fear of anyone," rather than "afraid of" something, cannot be said to amount to misconduct. His attempt to rephrase the question, based on the grand jury testimony, cannot be said to amount to misconduct either.

 Even assuming that the prosecutor's attempt to rephrase the question had amounted to misconduct, it clearly was not a deliberate attempt to improperly prejudice defendant. Neither do we find that the prosecutor's questions placed defendant in grave peril. The judge prohibited Leisure from answering any of the questions. We do not find the questions themselves placed defendant in grave peril because Leisure had already clearly testified to numerous facts which would allow the jury to infer Cheryl was scared and terrified and clearly stated that she had no idea what Cheryl was "afraid of." (R. at 1005.) While the judge should have struck the objectionable question and admonished the jury to disregard it, as defendant requested, failure to do so does not constitute reversible error.

VII. Sufficiency of the Evidence

Defendant does not challenge the sufficiency of the evidence at trial to support his conviction. He only challenges the sufficiency of the evidence absent some of the many

pieces of evidence to which he has made evidentiary ·challenges on appeal. Because we have found, in the above sections, that all the challenged evidence was properly admitted, we need not address this claim.

## VIII. Sentence

.The trial court .sentenced Angleton to an enhanced term of 55 years. Defendant challenges his sentence on several grounds, including a claim of error relating to the admission of evidence at sentencing.

### A. Admissibility of State's Exhibit

■ Defendant first claims that the sentence is defective because the trial court erroneously admitted and considered part of the pre-sentence report. The challenged exhibit consisted of a statement by a man who had cleaned up a burnt trailer which Angleton owned in 1989. The man purported to have found dildos, pornographic material, extra large size women's high heel shoes, and other indications of a bisexual lifestyle. At the sentencing hearing, defendant did not object to the admission of the exhibit. Because of this failure to object, defendant has waived the issue for appeal. *Locke v. State,* 461 N.E.2d 1090, 1092–93 (Ind.1984).

■ Furthermore, there is no merit in defendant's somewhat incoherent argument that the exhibit was relied upon by the sentencing judge. After the exhibit was admit-

ted as part of the pre-sentence report, Judge Barney recessed for a few minutes in order to read it. Defendant appears to contend that the judge abused his discretion by reading the irrelevant and prejudicial report and that, even though defendant agreed to admission of the report, the reading of the exhibit by the judge amounts to some type of unspecified Constitutional error.[7]

■ Sentencing judges are experienced at considering general information argued by the parties to support enhancement or reduction of a sentence, but then relying only on information relevant to the aggravators or mitigators. A judge need find only a single aggravator to enhance a sentence. *Sweany v. State,* 607 N.E.2d 387, 391 (Ind. 1993); *Davidson v. State,* 558 N.E.2d 1077, 1092 (Ind.1990). Judge Barney's sentencing statement does not suggest reliance on the information in the exhibit in any way, either as a mitigator or an aggravator.[8] We, therefore, presume that Judge Barney did not rely on the exhibit. *Coleman v. State,* 558 N.E.2d 1059, 1062 (Ind.1990) ("We generally presume that in a proceeding tried to the bench a court renders its decisions solely on the basis of relevant and probative evidence.").[9]

### B. Additional Claims of Sentencing Error

A sentencing court "shall make a record of the hearing, including ... if the court finds

---

7. In support of his argument, defendant cites federal cases which are clearly inapposite to the case at bar. In *Lemon,* objections to the contested information were lodged at sentencing, and reports filed by the sentencing judge indicated that unreliable information had actually served as a basis for the sentence. *United States v. Lemon,* 723 F.2d 922 (D.C.Cir.1983). In *Rizzo,* there was also an indication that the sentencing judge relied upon the unreliable information. *Rizzo v. United States,* 821 F.2d 1271 (7th Cir. 1987). Further, the information relied upon was juvenile delinquency adjudications without benefit of counsel, proceedings which clearly violated. the defendant's Constitutional right to counsel; whereas, in the case at bar, the exhibit did not contain any clear Constitutional violation of defendant's rights but was at most irrelevant and slightly prejudicial.

8. Judge Barney focuses on the nature and circumstances of the crime as an aggravating circumstance. He also refers to physical or mental

infirmity and to the harm suffered by the defendant's and victim's families.

9. Defendant contends that the sentencing judge should be deemed to have considered the "lurid aggravating implications" of the State's exhibit. The contention fails to distinguish between considering information and relying on information as an aggravating factor. Both parties cite to *McCollum,* which stands for the proposition that it is presumed that a judge has *considered* all information presented by the defense in support of a finding of a mitigator. *McCollum v. State,* 582 N.E.2d 804 (Ind.1991). *McCollum* does not state that a judge is presumed to *rely on* and use as a basis for his sentence all such information. Indeed, only information used as a basis for the mitigators stated in the sentencing statement is presumed to have been relied upon by the sentencing judge. *McCollum* is inapposite to the case at bar where the issue is whether the judge relied upon information in the State's exhibit as a basis for defendant's sentence.

aggravating circumstances or mitigating circumstances, a statement of the court's reasons for selecting the sentence that it imposes." I.C. § 35–38–1–3 (1993).

> The statement of reasons should contain three elements: 1) identification of all significant mitigating and aggravating circumstances found, 2) specific facts and reasons which lead the court to find the existence of each such circumstance, and 3) articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence.

*Scheckel v. State*, 620 N.E.2d 681, 685 (Ind. 1993). We have previously addressed the issue of the standard of appellate review of a sentencing statement which rests in part on impermissible grounds.

> A sentence supported by permissible grounds sufficient to persuade the reviewing court that the original sentencing decision would have been the same had the trial court not relied on the impermissible factor should be affirmed. When the appellate court cannot reach that conclusion with confidence, it should remand for a new sentencing or revise the sentence on appeal.

*Day v. State*, 560 N.E.2d 641, 642 (Ind.1990).

■ Judge Barney's sentencing statement, while detailed, is not completely clear. In discussing the aggravators, he states that the crime "was a killing of a person who was asleep . . . with no defense." (R. at 2137.) He also describes the crime as motivated by either insurance money or marital difficulty. These factors were properly considered under the statutory aggravator, the nature and circumstances of the crime. I.C. § 35–38–1–7.1(a)(2) (1993). "While a material element of a crime may not also constitute an aggravating circumstance to support an enhanced sentence, the court may look to the particularized circumstances of the criminal act." *Smith v. State*, 675 N.E.2d 693, 698 (Ind. 1996).

■ Judge Barney also discussed the effect of the murder on the families of defendant and Cheryl. Defendant did not object to the admission of this evidence. The sentencing judge could consider this victim impact evidence. *See Edgecomb v. State*, 673 N.E.2d 1185, 1199 (Ind.1996); *Loveless v. State*, 642 N.E.2d 974, 978 (Ind.1994).

■ It is unclear whether Judge Barney intended the other aggravators mentioned as statutory or non-statutory aggravators. He states, "An aggravating circumstance, by statute is, victim's mental or physical infirmness, and I guess when you're asleep, which is not what the statute means, but at least at that point, a person is absolutely defenseless. Therefore, the shooting and killing of Cheryl Angleton was a cold-blooded and a calculated act." [10] (R. at 2138–39.) It is unclear whether Judge Barney used this as an aggravator under the statutory aggravator that the victim was mentally or physically infirm, I.C. § 35–38–1–7.1(b)(6), or whether he intended it as further description of the nature and circumstance of the crime. Judge Barney had already, at the start of his statement, noted the state of sleep when describing the nature and circumstances of the crime. And, as he states, a state of sleep would not properly fall under the statutory aggravator that the victim was mentally or physically infirm. *See Jenkins v. State*, 492 N.E.2d 666 (Ind.1986) (using statutory aggravator because victim crippled); *Page v. State*, 442 N.E.2d 977 (Ind.1982) (using aggravator where victim was epileptic 12–year–old child with cerebral palsy and mental age of 5); *Dellenbach v. State*, 508 N.E.2d 1309 (Ind.Ct. App.1987) (using statutory aggravator be-

**10.** Defendant challenges the sentencing judge's finding that Cheryl was asleep at the time of her death. Defendant cites *Scheckel v. State*, 620 N.E.2d 681 (Ind.1993), for this proposition. In *Scheckel* the sentencing judge found that the victim was physically and mentally infirm because of blood alcohol level and a state of sleep. The Court of Appeals found that the sentencing court had abused its sentencing discretion in so doing because no evidence showed blood alcohol level and the evidence was that the victim was awake and struggling at the time of death. In the case at bar, Judge Barney had much evidence from which he could properly, within his discretion, infer that Cheryl was asleep at the time of death. A forensic pathologist testified that Cheryl was shot from a foot away and her body indicated no signs of struggle. Also, she was killed in or near her bed at a late hour of the night.

cause victims were aged and infirm). It was, thus, erroneous for Judge Barney to imply state of sleep was used as an aggravator separate and distinct from the nature and circumstances of the crime.

■ Judge Barney also states in his sentencing statement,

I don't know why Cheryl Angleton didn't know that Brad Angleton was in financial difficulties at the time of their marriage; I don't know why a husband doesn't assist in funeral expenses for his wife. I don't know why a husband doesn't check from time-to-time to ascertain the progress of an investigation into the murder of his wife, or the burglary of his apartment, if any there was; ... I don't know why those things were not done, but certainly in the aggregate, it would be a person of greater naivete, ... would not in the aggregate consider those to be aggravating circumstances. I just don't understand why those things would not happen. Unfortunately, the conclusion is that Mr. Angleton knew what happened, and it was just a question of whether or not the Indianapolis Police Department could eventually put it together, as to what happened. Neither side touched upon the fact that the evidence was clear that Mrs. Angleton is, "missing", so Mr. Angleton went and checked in a hotel. You know, all of those things went into the Jury's conclusions, I'm sure. But, if your wife is missing, you ought to be somewhere where you can be found, or do what you can, you know.

(R. at 2141–43.) It is unclear whether Judge Barney used this evidence of defendant's lack of actions as an aggravator separate and distinct from the aggravator of the nature and circumstances of the crime. If so, he did not adequately state what type of separate non-statutory aggravator he considered the evidence to be.[11] Judge Barney could properly rely on defendant's lack of actions, which would be expected by someone whose wife has died (whether or not he is maintaining his innocence), as evidence of the nature and circumstances of the crime. These actions include not disclosing financial difficulties, not investigating the burglary, and not helping with funeral expenses. It is improper, however, to rely on a defendant's maintaining his innocence as an aggravator. *See Linger v. State,* 508 N.E.2d 56, 64 (Ind.Ct.App.1987) ("The trial court, however, may not consider Linger's denial of guilt as an aggravating factor and the trial court erred in doing so here."). A defendant's Constitutional privilege against self-incrimination protects him from having to confess to the police. *United States v. Lemon,* 723 F.2d 922, 937 (D.C.Cir. 1983). ("Thus, a defendant may not be given a higher sentence in retaliation for invoking the fifth amendment privilege against self-incrimination.") To the degree Judge Barney relied on the conclusion that "Mr. Angleton knew what happened, and it was just a question of whether or not the Indianapolis Police Department could eventually put it together, as to what happened," as an aggravating circumstance, he erred.

Judge Barney also listed in his sentencing statement two mitigating factors. He found that defendant is unlikely to commit another crime and is using his education as a participant in a literacy program for other prisoners. He gave weight to the second mitigator, as many prisoners may benefit from learning to read from defendant. Judge Barney properly considered the evidence argued in support of mitigation and found the two listed mitigators.[12]

■ We conclude that at least one proper aggravator was used by the court. The court

considered all the issues raised by defendant: his education, law-abiding life, unlikelihood of committing another crime, and likelihood of rehabilitation. A sentencing judge is not required to weigh evidence in the same manner as the defendant. *Harrison v. State,* 644 N.E.2d 888, 893 (Ind.Ct.App.1994). This is not a case where the sentencing statement suggests a blatant disregard for the evidence, implying that mitigators were overlooked. *E.g. Scheckel,* 620 N.E.2d at 686.

11. Defendant alleges that Judge Barney meant this description as a separate non-statutory aggravator of lack of remorse. Had Judge Barney specified that he was using defendant's lack of remorse as an aggravator, he could properly have done so. *Barnes v. State,* 634 N.E.2d 46, 49 (Ind.1994); *Sweany v. State,* 607 N.E.2d at 391.

12. Defendant contends that the sentencing judge failed to consider mitigators plainly supported by the evidence. Judge Barney clearly, however,

also found two proper mitigators. Because we cannot say with confidence that the sentencing judge would weigh this aggravator against these two mitigators in the same manner as he weighed the three aggravators, two of which were improper, against the two mitigators, we remand for a new sentencing hearing. *Day,* 560 N.E.2d at 642.[13]

## CONCLUSION

We affirm defendant's conviction but remand for a new sentencing hearing.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

13. Defendant makes further sentencing arguments attacking the adequacy of Judge Barney's sentencing statement and contending that his 55 year sentence violates Article I, Sections 16 and 18 of the Indiana Constitution. Because of the remand for a new sentence on the above discussed grounds, it is unnecessary for us to address these issues.