# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 06 2020, 10:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Lindsay Van Gorkom
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Larry Warren,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

March 6, 2020

Court of Appeals Case No.
19A-PC-1299

Appeal from the
Marion Superior Court

The Honorable
Mark D. Stoner, Judge
The Honorable
Jeffrey L. Marchal, Magistrate

Trial Court Cause No.
49G06-1508-PC-30158

**Kirsch, Judge.**

[1] Larry Warren ("Warren") was convicted of three counts of child molesting,[1] each as a Class A felony, and two counts of child solicitation,[2] each as a Class D felony. On direct appeal, our court remanded the case for resentencing pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004). Warren appealed following resentencing and later filed a petition for post-conviction relief. The post-conviction court granted Warren's petition in part by vacating the two Class D felony convictions and sentences on the ground that they violated *ex post facto* laws. Warren now appeals from the partial denial of his petition for post-conviction review, raising the following consolidated and restated issues:

> I. Whether Warren received ineffective assistance of counsel when trial counsel failed to contemporaneously object to the admission of State's Exhibit 15, which was a sexually explicit video portraying Warren and the victim;
>
> II. Whether Warren received ineffective assistance of counsel when appellate counsel on direct appeal failed to argue that the admission of State's Exhibit 15 constituted fundamental error;
>
> III. Whether Warren received ineffective assistance of counsel when appellate counsel on appeal following resentencing failed to challenge the trial court's inadequate explanation for imposing consecutive sentences for two of the Class A felonies; and

---

[1] *See* Ind. Code § 35-42-4-3.

[2] *See* Ind. Code § 35-42-4-6.

IV.  Whether the post-conviction court erred when it failed to order a new sentencing hearing after vacating the sentence and conviction for each of the two Class D felonies.

[2]     We affirm.[3]

## Facts and Procedural History

[3]     The facts underlying Warren's convictions were set forth in prior appeals as follows:[4]

> In approximately 1998, Warren met and became business partners with D.R., the mother of two minor daughters, J.R. and H.R.  J.R. was nine years old when she met Warren, who was then approximately thirty-three years old.  Soon Warren and D.R. began dating, and Warren began spending more time at D.R.'s house.  Warren became a companion to J.R., driving her to skating lessons, taking her to movies, and taking her out to eat.  At some point while J.R. was still nine years old, Warren began engaging in frequent sexual activity with her.  For the first few years, the sexual activity included activities like oral sex but excluded intercourse.  Then, when J.R. was thirteen years old, she and Warren began engaging in intercourse.  Warren would often videotape sexual encounters with J.R., and he took inappropriate photographs of her.  When J.R. was approximately

---

[3] We thank the post-conviction court for its thorough, informative, and well-written order, which greatly assisted our consideration of Warren's claims.

[4] There were three separate appeals in this case; therefore, we will use the following abbreviations to cite to the records in each of those cases.  We will refer to:  (1) the direct appeal, Cause No. 49A04-1301-CR-25, as "CR-25"; (2) the resentencing appeal, Cause No. 49A02-1402-CR-89, as "CR-89"; and the underlying documents in the instant appeal as "PCR."

fourteen and a half years old, Warren moved out of state for work.

When J.R. was eighteen or nineteen years old, she began a relationship with Warren, and he paid her rent on an apartment for one year. When Warren informed J.R. that he would not be renewing her lease, J.R. contacted police to report the incidents of child molesting Warren had committed during her childhood. J.R. had recovered a videotape recording depicting Warren and then-fourteen-year-old J.R. engaging in sexual activity, and she turned that videotape over to the police. J.R. also gave police inappropriate photographs Warren had taken of her when she was a minor.

[In January 2010, t]he State charged Warren with five counts of child molesting as Class A felonies and five counts of sexual misconduct with a minor as Class B felonies. [The State alleged that Warren had committed the Class A felony offenses between November 16, 1998 and November 15, 2002, when J.R. was under the age of fourteen.] The trial court subsequently dismissed the sexual misconduct counts because the statute of limitations had run, and the State moved to amend the information to add two counts of child solicitation as Class D felonies. [The State alleged that Warren committed child solicitation between November 16, 2002 and November 15, 2004, when J.R. was at least fourteen but less than sixteen years of age.] The trial court granted the State's motion to amend.

*Warren v. State*, No. 49A04-1301-CR-25, 2013 WL 5532705 ("*Warren I*"), at *1 (Ind. Ct. App. Oct. 8, 2013), *trans. denied*.

[4]     At his December 13, 2012 trial, Warren was represented by Felicia Howells ("Howells") and Andrea Ciobanu ("Ciobanu"). On the morning of trial, Howells and Ciobanu filed a motion in limine, in part, to exclude from

evidence State's Exhibit 15 ("Exhibit 15"), which was the "video allegedly recorded by [Warren] in or about 2003, at a time when the alleged victim would have been 14 years of age, purportedly depicting [Warren] digitally penetrating the vagina of the alleged victim." *PCR Appellant's App. Vol. II* at 144. This was the sixth such motion filed over the three years the case was pending that had sought to prevent admission of Exhibit 15 on the basis that it was "overly prejudicial and not probative." *CR-25 Appellant's App. Vol. II* at 246-47.

[5] Just prior to trial, the trial court heard argument from Howells and Ciobanu regarding the six motions. Noting that Exhibit 15 "goes to" the Class D felonies, Howells offered to stipulate that Warren had touched J.R. when she was fourteen and a half years old, thus negating the need to introduce Exhibit 15. *CR-25 Tr. Vol. I* at 14. Howells argued that Exhibit 15 was not probative because it "wouldn't prove that [Warren] performed prior acts." *Id.* at 15. Ciobanu argued that Exhibit 15 did not "go to the initial A count, which alleged molestation prior to the age of 14, it only addresses molestation by the videos on admittance that it happened at 14," which coincides with the Class D felonies. *Id.* at 15. Howells also argued that "with respect to the video recordings and pictures of alleged victim naked taken by [Warren] at his mother's home . . . [and] in a hotel room, we again strongly reiterate that that should be excluded . . . . Those pictures are highly prejudicial and inflammatory." *Id.* at 19. Warren, likewise, sought to suppress certain letters that J.R. wrote to Warren, arguing that they were not relevant and more prejudicial than probative. *Id.* at 21-22.

[6] The State argued that Exhibit 15 was "'part and parcel of the crimes charged here. Not only is it actually a part of the crime in Counts [VI] and [VII],[5][ ] but it is also part and parcel of crimes . . . as charged in [I] through [V] as it goes to the nature of the relationship for those counts . . . .'" *Id*. at 12. The State said it did not agree that Warren could stipulate to having committed the two Class D felonies. *Id*. at 14. The State argued that the exhibits were all "relevant" and "part and parcel of the crime." *Id*. at 23. Argument on the motions to exclude the incriminating photographs and Exhibit 15 was extensive. *Id*. at 12-32. The trial court denied Warren's requests to exclude the photographs and Exhibit 15 and denied Warren's offer to stipulate that he had committed the Class D felonies by touching J.R. in a sexual way when she was fourteen years old. *Id*. at 14, 27.

[7] A jury was empaneled, and during opening argument, Howells contended that J.R.'s credibility was suspect, stating,

> [Y]ou're going to meet a 24-year-old J.R. who took advantage of a situation, who when our client, Mr. Warren, stopped helping her out with her children, stopped helping her out with her rent, stopped assisting her financially, . . . after 12 years or so of alleged abuse, suddenly raises an issue of, he abused me from the time I was 9 until I was 14, 15. Which is quite interesting, because none of these allegations were made when she was 9, when she was 10, when she was on a school bus at around 11,

---

[5] In the original information, the State charged Warren with Class B felony sexual misconduct with a minor under Counts VI through X. Those counts were dismissed, and the State amended the information to charge Warren with Class D felony child solicitation under Counts XI and XII. Notwithstanding that numbering, the trial court referred to the child solicitation felonies as Counts Six and Seven. *CR-25 Tr. Vol. II* at 319-22.

and she was asked by her friend . . . about the relationship . . .,
she denied there was a relationship . . . .

So you're going to hear a J.R. who, when it was convenient for
her, when, for lack of a better phrase, the well runs dry, suddenly
these harsh allegations, these life-altering, these incredible
allegations are made for something that has allegedly been going
on since age 9.

[W]e will introduce evidence . . . that Mr. Warren, our client,
was paying her rent . . . . And when he informed her that he was
no longer going to be able to pay her rent . . . she was livid.
We're going to show that she went to the apartment manager and
[repeatedly] told the apartment manager that I will get him. . . .
And yeah, she got him. You guys are here today. He's sitting
over there simply because he was no longer supporting her.

So you're going to meet a J.R. who's not this 9-year-old J.R.
who's a victim; you're going to meet . . . a 24-year-old J.R. who
really knows how to work the system, who really knows how to
take things and use them to her advantage.

*CR-25 Tr. Vol. I* at 54-56. Howells argued to the jury that dates were important;

noting that a conviction could not rest on vagueness. *Id.* at 56.

[8] Addressing the contents of Exhibit 15, Howells argued:

[Y]ou are going to be presented with . . . a video of J.R. and
[Warren] together. And in this particular video, there is an
image of . . . [Warren] touching J.R. The video will say that this
happens at [the age of] 14. Now, when you look at the charges
that have been filed against Mr. Warren, the "A" charges, the
most severe charges, have to do with the ages prior to 14. So the
only objective evidence that they have is a video showing

something at 14. Everything relating to what happened between 9, 10, 11, 12 is all conjecture, it's all testimony. . . . No one went to a nurse. No one went to a social worker. There was no medical examination ever done. So I just want you to just look at that video with the knowledge that with respect to the items between 9 and 14, there's nothing, except he touched me. . . . That's it. Or did this to me or he did that. But again, I remind you there are no dates.

*Id*. at 56-57.

[9]     J.R. was the State's key witness and testified that Warren had committed various acts of vaginal penetration, including acts that occurred in her mother's house when J.R. was nine years old, in Warren's mother's house when J.R. was thirteen, and at a Ramada Inn when she was thirteen. *Id*. at 62-73. The State introduced a number of exhibits during J.R.'s testimony, including a letter J.R. wrote to Warren when she was about twelve years old, describing her intimate relationship with Warren. *CR-25 State's Conf. Ex.* 2. When the State moved to admit Exhibit 15, the trial judge asked, "Response from the defense?" *CR-25 Tr. Vol. I* at 86. Ciobanu responded, "I have no objection, Your Honor," and the State admitted Exhibit 15. *Id*. at 87. J.R. testified that the sex acts depicted in the video, as well as the acts committed in the homes and in a Ramada Inn, were all performed in Marion County. J.R. identified Warren as the man performing the sexual acts. *Id*.

[10]    Against advice of counsel, Warren testified that he had not engaged in anything sexual in nature with J.R. when she was between the ages of nine and fourteen. *Id*. at 205. He reiterated that nothing sexual happened at J.R.'s mother's house

and nothing happened at his mother's house. *Id.* at 208. Admitting that he had seen Exhibit 15, Warren testified that the video depicted the first time that he had any kind of sexual contact with J.R. *Id.* at 208-09. Although the video suggested that J.R. had intercourse that day, Warren denied that he was the one with whom she had intercourse. *Id.* at 230-31. Instead, Warren testified that J.R. and her boyfriend had engaged in intercourse earlier that day. *Id.* Warren said that he had no sexual relationship with J.R., other than that shown in Exhibit 15, until J.R. was eighteen years old. *Id.* at 215.

[11] In closing, the State recited J.R.'s testimonial evidence as proof of the five counts of Class A felony child molesting and cited to Exhibit 15 as support for the Class D felony counts. *CR-25 Tr. Vol. II* at 252-55. The jury found Warren guilty of three counts of Class A felony child molesting and two counts of Class D felony child solicitation but found him not guilty of the remaining two counts of Class A felony child molesting. *Id.* at 275. The trial court sentenced Warren to "30 years plus 10 years aggravating" for each Class A felony conviction and "one and a half years plus one and a half years aggravating" for each Class D felony conviction and ordered that the sentences would run concurrently, except that one of the sentences for child molesting would run consecutive to the others, for an aggregate term of eighty years. *Id.* at 319-20.

[12] On direct appeal, Warren's appellate counsel, Victoria L. Bailey ("Bailey"), raised just one issue: "[W]hether the trial court erred when it enhanced [Warren's] sentence based on aggravators that were neither found by a jury nor admitted in accordance with the holding in *Blakely v. Washington*, 542 U.S. 296

(2004)." *Warren I* at *1. Our court observed that Warren committed the offenses prior to the April 2005 amendment of Indiana's sentencing scheme; therefore, Warren was entitled to be sentenced under the former presumptive sentencing scheme to which *Blakely* applied. *Id*. at *2. We held that Warren's testimony was sufficient to establish the aggravating circumstance that he violated a position of trust with J.R., an aggravator that did not violate *Blakely*. *Id*. at *3. However, we also held that the trial court's other two aggravators violated *Blakely* and, therefore, could not stand. *Id*. We remanded to the trial court "with instructions to afford the State an election to prove to a jury those aggravating circumstances initially presented to, and found by, the trial court." *Id*. We also held that, should the State forgo that election, the trial court was instructed to reconsider the appropriate sentence based on the single, established violation of a position of trust. *Id*.

[13] During the resentencing hearing, the State did not argue aggravators to a jury; instead, it proceeded to resentencing with only the established aggravating circumstance that Warren had violated a position of trust with J.R. *CR-89 Tr. Vol. I* at 4. Warren offered mitigating circumstances saying that, while incarcerated, he had completed numerous courses, had no criminal history, and "had no conduct reports." *Id*. at 6, 11. He said he was employed by PEN Products, was enrolled in an apprenticeship program, served as an executive officer with the American Legion, regularly attended church, and played and helped coach softball. *Id*. at 6. Warren testified that he was still being treated for post-traumatic stress disorder ("PTSD"), which arose after his military

service. *Id*. at 8. In response to defense counsel's question of what he regretted, Warren said:

> [T]his has been a big struggle for me, Your Honor. I have allowed myself to be put in situations that I should not have. And I've had to live with that every day. And I do apologize for my actions. I apologize for putting the Courts through this as well as the prosecutors, as well as my family and my attorneys. I just ask, Your Honor, to please have mercy on me. I deeply regret what I've done. . . . I will never allow these things to happen or be put in that position ever again, Your Honor. And I just would like to have mercy and ask mercy from the Courts and so that I can . . . so I can go home and be with my family and take care of my father, Your Honor. And be with my mom.

*Id*. at 11.

[14] The State commented that Warren had apologized to everyone but the victim and her family and, again, reminded the court that Warren had, for many years, violated a position of trust with J.R. *Id*. at 15. The State, responding to Warren's claim that he allowed himself to be put in a situation, said:

> He was a grown-up. She was a child. That position of trust in a child molesting case is the worst aggravator that a person can violate with a child. That child was with him. Taking her places. He took her to . . . ice skating lessons. He took her to the movie. The video that we saw was of them spending the day together, driving around in a car where he was letting her drive when she was fourteen, videotaping her, videotaping her ice skating and then taking her to a . . . trailer and performing criminal deviate conduct on her [by digital penetration]. That is not what a grown-up does or a person who has [PTSD] or any of those things, does to a child. That man molested a child for a

long period of time. That position of trust is the worst aggravator that can be ever done to a child in that case. This isn't a modification of sentence. So I would ask that the Judge give little weight to . . . the programs that he has taken while he's been in D.O.C. These are crimes of violence which can run consecutively and if the Judge takes into account that these were three distinct acts that took place over . . . different periods of times. They were three different A felonies that he was found guilty of. So these should run consecutively, not concurrently.

*Id*. at 16.

[15] From the evidence presented, the trial court on resentencing found one aggravating factor, Warren's violation of the position of trust, and one mitigating circumstance, his lack of criminal history. *Id*. at 18-19. The court stated: "with respect to the proposed mitigator that you're likely to respond well to short term imprisonment and you [are] low risk to re-offend, the Court finds there is insufficient evidence to justify that mitigator and rejects that mitigator looking at the nature and circumstances of the offense and convictions." *Id*. at 18. The court rejected Warren's proposed mitigator of his PTSD. *Id*. The court also rejected Warren's proposed mitigator that he was molested as a child and stated: "If you were molested as a child, if that's true, then you understand the pain and the trauma that has resulted by being a victim of molest." *Id*. The court rejected Warren's proposed mitigator that he was on GPS monitoring for two years and did not re-offend. *Id*. at 19. The trial court found the aggravating factor of violating a position of trust outweighed the mitigating factor of lack of criminal history. *Id*. The court sentenced Warren to

thirty years, aggravated by five years, for each of his Class A felony child molesting convictions and one and a half years, aggravated by one and a half years, for each of his Class D felony child solicitation convictions. *Id.* The court ordered the sentences for two of the Class A felony convictions to be served consecutively and ordered the remaining sentences be served concurrently, for an aggregate term of seventy years. *Id.*

[16] Represented by attorney Eric K. Koselke ("Koselke"), Warren appealed the revised sentence, claiming that the trial court abused its discretion by failing to give weight to significant mitigating circumstances, and that Warren's sentence was inappropriate in light of the nature of the offense and the character of the offender under Appellate Rule 7(B). *Warren v. State* ("*Warren II*"), No. 49A02-1402-CR-89, 2014 WL 4809796, at *1, *2 (Ind. Ct. App. Sept. 29, 2014), *trans. denied*. Addressing the first issue, our court noted:

> Under the pre-April 25, 2005 sentencing statutes, sentencing decisions rest within the discretion of the trial court and are reviewed on appeal only for an abuse of discretion. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court. In order for a trial court to impose an enhanced sentence, it must: (1) identify the significant aggravating factors and mitigating factors; (2) relate the specific facts and reasons that the court found to those aggravators and mitigators; and (3) demonstrate that the court has balanced the aggravators with the mitigators.

*Warren II* at *3 (internal citations and quotation marks omitted). Warren argued that the trial court abused its discretion when it rejected all but one of

his proposed mitigating factors. Analyzing each factor in turn, our court concluded that the trial court did not abuse its discretion when it found Warren's lack of criminal history as the sole mitigator. *Id*. at *3-*5.

[17] Koselke next argued that Warren's sentence was inappropriate in light of the nature of the offense and his character. *Id*. at *5. Pointing to his lack of criminal history, his military service, his good conduct in prison, his poor health, and the fact he "had been a victim of molestation," Warren urged our court to revise his sentence to an aggregate sentence of thirty years. *Warren II* at *5. The State responded that the nature of the offense was heinous; Warren "effectively groomed and bribed his young victim into providing him with sex and not telling about it by taking her places she wanted to go and buying her things that she wanted." *Id*. (citation to record omitted). Regarding Warren's character, the State argued that he has not led a law-abiding life, experimented with and used illegal substances, and did not have remorse for his sexual acts against J.R. *Id*. Our court, considering the nature of the offense and Warren's character, said that Warren was in a position of trust with J.R., and he began engaging in frequent sexual activity with her at age nine. *Id*. at *6. Warren began having intercourse with J.R. when she was thirteen years old, and he taped and took inappropriate pictures of those sexual encounters. *Id*. Our court agreed that Warren had violated a position of trust but had no prior criminal history. *Id*. Based on the evidence, our court explained that the trial court (1) enhanced Warren's Class A felonies by five years above the presumptive sentence of thirty years, (2) ordered only two of the three Class A felony

convictions to run consecutively, and (3) ordered that the sentences for the two class D felonies be served concurrently. Our court concluded that "in light of the position of trust Warren held with J.R., . . . the sentence imposed by the trial court is not inappropriate in light of the nature of the offense and the character of the offender." *Id*.

[18] In August 2015, Warren filed a pro se petition for post-conviction relief, which was amended and refiled on January 8, 2018, after Warren obtained counsel. In the Amended Petition, Warren made allegations regarding the ineffective representation of trial counsel, appellate counsel on direct appeal, and appellate counsel and appeal following resentencing. *PCR Appellant's App. Vol. II* at 46-49. Warren alleged that Howells and Ciobanu were ineffective for (1) failing to file a motion to dismiss the two child solicitation counts based upon the prohibition against *ex post facto* laws under the United States and Indiana Constitutions and (2) failing to contemporaneously object under Indiana Evidence Rules 401, 402, 403, and 404(b) to the introduction of Exhibit 15 during trial. *Id*. at 46, 51. Warren also alleged that Bailey was ineffective on direct appeal was ineffective for (1) failing to argue that his convictions for child solicitation violated the prohibition against *ex post facto* laws under the United States and Indiana Constitutions and (2) failing to argue that the admission of Exhibit 15 was fundamental error. *Id*. at 47. Further, Warren alleged that Koselke was ineffective on appeal from resentencing for failing to argue that the trial court erred in imposing consecutive sentences without adequately explaining its reasoning. *Id*.

[19]     The post-conviction court held an evidentiary hearing on the Amended Petition on August 16, 2018. *PCR Tr. Vol. II at 2.* Attorneys Ciobanu, Howells, Koselke, and Bailey testified during the hearing. The State cross-examined these witnesses and did not present additional evidence. The post-conviction court issued Findings of Fact and Conclusions of Law Granting Post-Conviction Relief in Part. PRC *Appellant's App. Vol. II at 142-65.* The post-conviction court held that Howells, Ciobanu, and Bailey were ineffective with regard to Warren's *ex post facto* claims because the version of the child solicitation statute under which Warren was charged and convicted did not exist at the time of the alleged offenses. *Id.* at 159, 162. Furthermore, Neither Ciobanu nor Howells knew that the version of Indiana Code section 35-42-4-6 in effect on the dates of Warren's alleged offenses was the version applicable to Warren's case. *Id.* at 155. During the time period when Warren was alleged to have committed child solicitation offenses, Indiana Code section 35-42-4-6 did not criminalize such conduct toward children age fourteen and above, unless the defendant believed the child to be under the age of fourteen. *Id.* at 154. Bailey acknowledged during the post-conviction hearing that she did not review the version of Indiana Code section 35-42-4-6 in effect at the time of the offenses and that she should have done so. *Id.* at 155. The post-conviction court vacated Warren's two convictions for child solicitation. *Id.* at 165.

[20]     Warren also argued that Exhibit 15 was improperly admitted, specifically, that (1) trial attorneys Howell and Ciobanu were ineffective for failing to make a contemporaneous objection to Exhibit 15's admission at trial; and (2) appellate

counsel, Bailey, was ineffective for failing to argue on direct appeal that the admission of Exhibit 15 constituted fundamental error. *Id.* at 46-47. Warren also argued that Koselke was ineffective for failing to argue on appeal that the trial court's resentencing order inadequately explained its reasons for imposing a consecutive sentence. *Id*. at 47.

[21] During the August 16, 2018 post-conviction fact-finding hearing, Warren asked Ciobanu and Howells why they did not object when the State sought to admit Exhibit 15. Ciobanu provided two explanations saying, first, that it was not her role and, second, that Warren "had all these different facts . . . that kept morphing." *PCR Tr. Vol. II* at 19-20. Howells and Ciobanu testified that they thought the trial court's pre-trial ruling on the admissibility of the Exhibit 15 was the last word on the matter and that their pre-trial arguments had preserved the issue for appeal. *Id*. at 20-21, 39-40. In response to the State's question of whether Howells was aware of the general rule that the failure to contemporaneously object to the introduction of evidence waives the issue on appeal," Howells replied, "[W]e were in the heat of trial. . . . We had a client who had been deceptive to us. . . . I am well aware of that . . . I had to tend to what was before me." *Id*. at 40. Bailey testified that she had considered whether to challenge the admission of Exhibit 15 on direct appeal. *Id*. at 58. However, noting that trial counsel had not objected to the admission of Exhibit 15, and therefore the issue was not preserved for appeal, Bailey determined that she could not meet the high standard to prove fundamental error. *Id*. at 60-61. Koselke testified that, at the time he appealed, he knew the law regarding

consecutive sentencing, saying "that's pretty basic stuff." *Id*. at 53-54. Koselke stated he did not raise the issue of consecutive sentences because Warren had already received a ten-year reduction and, typically, when that issue is raised, it is sent back to the trial court and, often times, the trial court changes the sentencing statement but imposes the same sentence. *Id*. at 54. Koselke believed, based on his review of the record, that it was best to argue abuse of discretion and inappropriate sentence because, then, the sentence would be imposed by the court of appeals, which Koselke believed was the better venue for relief. *Id*. Koselke explained that he thought Warren "had a lot of mitigation. *Id*.

[22] The post-conviction court found that the representation provided by Howells and Ciobanu fell below professional norms, when they did not object to the admission of Exhibit 15 yet found that counsel was not ineffective because Warren had not proved prejudice from that error. *PCR Appellant's App. Vol. II* at 160. The post-conviction court also found no ineffective assistance of counsel by: (1) Bailey, because there was "not a reasonable probability that any challenge to the admission of Exhibit 15 under a claim of fundamental error would have been successful" when Ciobanu stated she had no objection to Exhibit 15; and (2) Koselke, because the trial court provided sufficient explanation of its reason for imposing consecutive sentences. *Id*. at 162-63, 164. Finding that counsel provided effective assistance of counsel, our court left the remaining three convictions and sentences for Class A felony child molesting

untouched and did not remand the case for resentencing.  Warren now appeals.

Additional facts will be presented as necessary.

# Discussion and Decision

[23]  This is an appeal from the denial of a petition for post-conviction relief.

> We observe that post-conviction proceedings do not grant a
> petitioner a "super-appeal" but are limited to those issues
> available under the Indiana Post-Conviction Rules.  [Ind. Post-
> Conviction Rule 1(1)].  Post-conviction proceedings are civil in
> nature, and petitioners bear the burden of proving their grounds
> for relief by a preponderance of the evidence.  Ind. Post-
> Conviction Rule 1(5).  A petitioner who appeals the denial of
> [post-conviction relief] faces a rigorous standard of review, as the
> reviewing court may consider only the evidence and the
> reasonable inferences supporting the judgment of the post-
> conviction court.  The appellate court must accept the post-
> conviction court's findings of fact and may reverse only if the
> findings are clearly erroneous.  If a [post-conviction] petitioner
> was denied relief, he or she must show that the evidence as a
> whole leads unerringly and unmistakably to an opposite
> conclusion than that reached by the post-conviction court.

*Massey v. State*, 955 N.E.2d 247, 253 (Ind. Ct. App. 2011) (quoting *Shepherd v.*

*State,* 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010) (citations omitted), *trans.*

*denied*).

[24]  Here, the post-conviction court made findings of fact and conclusions of law in

accordance with Indiana Post-Conviction Rule 1(6).  "A postconviction court's

findings and judgment will be reversed only upon a showing of clear error—that

which leaves us with a definite and firm conviction that a mistake has been

made." *Benefield v. State*, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011) (citations and quotation marks omitted) (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000)). "The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses." *Woods v. State*, 701 N.E.2d 1208, 1210 (Ind. 1998). We do not defer to the postconviction court's conclusions of law. *Wilson v. State*, 799 N.E.2d 51, 53 (Ind. Ct. App. 2003).

[25] Warren challenges the effectiveness of the representation of his trial attorneys, appellate counsel on direct appeal, and appellate counsel on appeal after resentencing. "The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel and mandates that the right to counsel is the right to the effective assistance of counsel. *Bobadilla v. State*, 117 N.E.3d 1272, 1279 (Ind. 2019). "We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland*." *Rondeau v. State*, 48 N.E.3d 907, 916 (Ind. Ct. App. 2016) (citing *Strickland v. Washington,* 466 U.S. 668, 698 (1984)), *trans. denied*. Effectiveness of counsel is a mixed question of law and fact. *Strickland,* 466 U.S. at 698. To prevail on a claim of ineffective assistance of counsel, Warren must demonstrate that (1) counsel's representation fell short of prevailing professional norms, and (2) counsel's deficient performance prejudiced the defendant such that there is a reasonable probability that, but for counsels unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88, 698. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Rondeau*, 48 N.E.3d at 916 (quoting *Strickland*, 466 U.S. at 698).

"The two prongs of the *Strickland* test are separate and independent inquiries." *Id*. (citing *Strickland*, 466 U.S. at 697). "Thus, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id*. (quoting *Strickland,* 466 U.S. at 697).

## I. Ineffective Assistance of Trial Counsel

Warren argues that his trial counsel was ineffective for failing to make a contemporaneous objection to the admission of Exhibit 15 on the basis it was not relevant and more prejudicial than probative. "[T]o prevail on a claim of ineffective assistance due to the failure to object, the defendant must show an objection would have been sustained if made." *Overstreet v. State,* 877 N.E.2d 144, 155 (Ind. 2007).

Here, trial counsel filed numerous motions in limine seeking to exclude Exhibit 15 from evidence. In fact, shortly before trial, Howells and Ciobanu argued against its admission. Nevertheless, when the State sought to introduce Exhibit 15 during trial, Ciobanu stated, "I have no objection, Your Honor." *CR-25 Tr. Vol. I* at 87. The post-conviction court found "that counsels' failure to reassert the objection to the admission of State's Exhibit 15 when the State sought to introduce the evidence at trial fell below prevailing professional norms." *Appellant's Br.* at 17 (citing *PCR Appellant's App. Vol. II* at 160). Even so, the post-conviction court found no ineffective assistance of counsel, because Warren had not proved prejudice from trial counsels' failure to object and denied post-conviction relief on that issue. The post-conviction court found:

93. Having viewed State's Exhibit 15 along with the remaining record, the Court is unable to find that an objection or renewed motion pursuant to Rule 403 would have been successful. Although the exhibit depicted unlawful sexual conduct that is disturbing, it is unlikely that the trial court would have sustained an objection on the basis that the video was overly prejudicial and not probative of the charges.

*PCR Appellant's App. Vol. II* at 153-54.[6]

[28] Warren argues that the post-conviction court erred in making the above determination because Warren was prejudiced by the cumulative error of his own trial counsel's failure to file a motion to dismiss the Class D felonies as violative of *ex post facto* laws. Warren contends that Exhibit 15, which was explicit sexual footage of J.R. when she was fourteen years old, was relevant only to the Class D felonies and, without those counts, which were vacated, Warren's objection that Exhibit 15 was not relevant and was more prejudicial than probative, would likely have been successful. *Appellant's Br.* at 18. We disagree. Exhibit 15 was relevant not only as proof of the Class D felonies but also served as circumstantial evidence that allowed the jury to infer that Warren and J.R. had a sexual relationship when J.R. was thirteen years old, a claim that Warren denied. Furthermore, Exhibit 15 undermined Warren's claim that J.R. had made up the claims of molestation to seek revenge for Warren's

---

[6] Furthermore, on the morning of trial, Howells and Ciobanu made extensive arguments to the court on Warren's motion in limine to exclude Exhibit 15, and the trial court denied that motion. We note that it was improbable that the trial court would have sustained any objection to the admission of Exhibit 15 just hours later.

nonpayment of her rent. The trial court understood that Exhibit 15 was relevant to the Class A felonies as evidenced by its ruling to admit Exhibit 15 even after Warren offered to stipulate to having committed the Class D felonies.

[29] Even if Warren is correct that the objection to Exhibit 15 would have been sustained under Indiana Evidence Rule 404, merely asserting the violation of a particular rule of evidence, as Warren does here, is not enough to establish prejudice. *See Kubsch v. State*, 934 N.E.2d 1138, 1149 (Ind. 2010) (no prejudice where defendant failed to object to evidence that was not relevant to the charges filed against defendant). Rather, the *Strickland* test's prejudice prong requires an additional showing that the improper admission of evidence actually had an adverse impact on defense by establishing a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wentz v. State*, 766 N.E.2d 351, 360 (Ind. 2002).

[30] Here, Warren has not shown a reasonable probability that the jury was improperly swayed by the admission of Exhibit 15 in deciding that Warren was guilty of three of the five counts of Class A felony child molesting. First, Howells was able to downplay the importance of Exhibit 15 when, during opening argument, she argued that Exhibit 15 showed only events that occurred when J.R. was fourteen, events that had no bearing on Warren's guilt for the Class A felonies, which occurred when J.R. was age nine through age thirteen. *CR-25 Tr. Vol. I* at 56-57. Second, Warren had the opportunity to fully cross-examine J.R. after Exhibit 15 was introduced. *Id.* at 88-120.

[31] There are additional reasons that it was not reasonably probable that the jury was swayed by the admission of Exhibit 15. Although graphic and disturbing, Exhibit 15 was relevant and just one of the pieces of evidence that supported a finding of guilt on the three counts of Class A felony child molesting. J.R. testified that Warren had committed various acts of vaginal penetration from the age of nine through thirteen, including putting his penis in her vagina, once at her mother's house when J.R. was nine years old, once at Warren's mother's house when J.R. was thirteen, and once at a Ramada Inn when she was thirteen. *Id*. at 62-73. J.R. testified that some sexual acts caused her to have vaginal bleeding around age nine. *Id.* at 65. Age nine was also when J.R. began to engage in oral sex with Warren and watch pornography. *PCR Appellant's App. Vol. II* at 148.

[32] Further, the State submitted other substantial evidence that made it unlikely the jury was unduly swayed by the admission of Exhibit 15. The State introduced other exhibits, including a letter J.R. wrote to Warren when she was twelve years old, describing her intimate relationship with Warren. *CR-25 State's Conf. Ex.* 2. In that letter, J.R. threatened to tell people about their relationship unless Warren stopped dating another girl; J.R. testified she was mad at that time because "[Warren] was supposed to be her boyfriend." *CR-25 Tr. Vol. I* at 80-81. Over Warren's objection, the State also introduced several photographs taken by Warren that showed J.R., in sexual poses and wearing lingerie. *Id*. at 83-86. J.R. testified she remembered that, at thirteen years of age, she and Warren went to Priscillas, "a sex toys store." *Id.* at 72. J.R. had told Warren

she "wanted to wear a really cute outfit for him, so [Warren] went in and bought [her] a black kind of see-through top and the bottoms that go with it." *Id*. J.R. testified, "They were like little booty shorts." *Id*. In one photograph, J.R. was "depicted in the black top purchased by Warren shortly before they engaged in sexual intercourse." *PCR Appellant's App. Vol. II* at 149.

[33] Additionally, the jury had the opportunity to judge Warren's credibility when, against the advice of counsel, he testified. Warren said he met J.R. when she was nine years old but denied he had engaged in anything sexual in nature with J.R. when she was between the ages of nine and fourteen. *CR-25 Tr. Vol. I* at 205. Specifically, Warren challenged J.R.'s account that something sexual happened at J.R.'s mother's house and at his mother's house. *Id*. at 208-09. Admitting that he had seen Exhibit 15, Warren testified that the video depicted the first time that he had any kind of sexual contact with J.R. *Id*. at 209. Although the video suggested that J.R. had intercourse that day, Warren denied that he was the one with whom she had intercourse. *Id*. at 231. Instead, Warren testified that J.R. and her boyfriend had engaged in intercourse earlier that day. *Id*. at 230-31. Warren said that he had no sexual relationship with J.R., other than that shown in Exhibit 15, until J.R. was eighteen years old. *Id*. at 215. When J.R. was around eighteen years old, she told her mother about Warren having sexually abused her as a child. Soon thereafter, Warren learned that J.R.'s mother knew about his sexual activity with J.R. J.R. and her mother threatened to call the police. *Id*. at 232. Warren admitted that he made an agreement with J.R. that he would pay her rent for a year. *Id*. at 232-33.

[34] The manager of an apartment complex testified that she had leased an apartment, and Warren and J.R.'s names were both on the lease. *Id.* at 175. J.R. lived in the apartment, and Warren paid the rent. After the first year, Warren took his name off the lease. *Id.* at 179. The manager testified that, upon learning that Warren was no longer going to be paying the rent, J.R. became angry. *Id.* at 180. When J.R. did not pay the rent, the apartment complex sued J.R. and had her evicted. *Id.* at 181.

[35] Here, the question of whether J.R. was molested between ages nine and fourteen was predominantly a question of credibility. J.R. testified that Warren had sexually molested her continually from age nine through age fourteen, at which time he moved away. J.R. testified that the relationship began again in her late teenage years and continued until she was nineteen. The State introduced photographs and letters that supported J.R.'s testimony. Warren argued that he did not sexually molest J.R., saying that J.R. told no one about the alleged molestation during her childhood and only mentioned it when Warren stopped paying her rent. The jury believed J.R.'s testimony over Warren's testimony. While Exhibit 15 was not direct evidence of the elements to prove Class A felony child molesting, it allowed the jury to determine whether it was more probable than not that J.R. was telling the truth. From our review of the totality of the evidence, we find no reasonable probability that, but for the admission of Exhibit 15, the proceedings below would have resulted in a different outcome. *Gibson v. State*, 133 N.E.3d 673, 682 (Ind. 2019). Furthermore, an evidentiary error, if any, is harmless if its probable impact on

the jury, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. *Lambert v. State*, 675 N.E.2d 1060, 1065 (Ind. 1996), *cert. denied*, 520 U.S. 1255 (1996). Trial counsel was not ineffective in their representation of Warren.

## II. Ineffective Assistance of Counsel on Direct Appeal

[36] Warren next contends that Bailey, his appellate counsel on direct appeal, provided ineffective representation when she did not argue that trial counsel's failure to object to the admission of Exhibit 15 constituted fundamental error. To establish fundamental error, a defendant must show that the alleged error was so prejudicial as to make a fair trial impossible. *Ryan v. State,* 9 N.E.3d 663, 668 (Ind. 2014). Here, the alleged error was Bailey's failure to argue on direct appeal that trial counsel committed fundamental error by not objecting to the admission of Exhibit 15. In other words, Warren's argument is that the admission of Exhibit 15 was an error so prejudicial as to make a fair trial impossible.

[37] "[B]ecause the standard for ineffective assistance prejudice is based on a *reasonable probability of a different result* and fundamental error occurs only when the *error is so prejudicial that a fair trial is rendered impossible*," our court has held that "the standard required to establish fundamental error presents a higher bar." *Benefield*, 945 N.E.2d at 804 (emphasis added). "Establishing a claim of fundamental error requires a showing of at least as much prejudice to the defendant as a claim of ineffective assistance of [trial] counsel." *Culver v. State,*

727 N.E.2d 1062, 1070 (Ind. 2000). "[A] finding that Defendant was not denied the effective assistance of [trial] counsel also establishes that the alleged error was not so prejudicial as to constitute fundamental error." *Id.* Accordingly, our finding that Warren's trial attorneys were not ineffective for failing to "object" to the admission of Exhibit 15, necessitates the conclusion that Bailey, likewise, was not ineffective for failing to argue that the lack of an "objection" constituted fundamental error. Regardless of whether Bailey's representation fell short of prevailing professional norms, Warren has not proven that Bailey was ineffective for failing to argue that the admission of Exhibit 15 by the trial court was fundamental error.

## III. Ineffective Counsel on Appeal from Resentencing

[38] Koselke, who represented Warren on appeal from resentencing, raised two issues, (1) whether the trial court abused its discretion by failing to give weight to significant mitigating circumstances, and (2) whether, under Appellate Rule 7(B), Warren's sentence was inappropriate in light of the nature of the offense and Warren's character. Here, Warren contends that Koselke provided ineffective representation when he did not also challenge the resentencing court's inadequate explanation for imposing *consecutive sentences* for two of his Class A felony convictions. *Appellant's Br.* at 18 (emphasis added).

[39] Citing to three Supreme Court cases—*Lander v. State*, 762 N.E.2d 1208 (Ind. 2002), *Monroe v. State*, 886 N.E.2d 578 (Ind. 2008), and *Harris v. State*, 897 N.E.2d 927 (Ind. 2008)—Warren argues, "Multiple times, the Supreme Court

has addressed the question of whether a trial court, in imposing consecutive sentences under Indiana's former presumptive sentencing scheme, adequately explained its reasons for doing so." *Appellant's Br*. at 39. Warren asserts that in those three cases, "readily available to appellate counsel at the time of *Warren II*, the Supreme Court held the trial court's explanation was inadequate and thereafter revised the appellants' sentences downward." *Id*. at 39-40. Warren maintains that this issue was significant and obvious from the face of the record, and Koselke was ineffective for not raising it. Assuming without deciding that Koselke should have raised this issue on appeal from resentencing, we find Warren was not prejudiced.

[40] Warren committed his crimes before the legislature amended Indiana's sentencing statutes to provide for "advisory sentences" rather than "presumptive sentences." *Monroe*, 886 N.E.2d at 579. The sentencing statute in effect at the time a crime is committed governs the sentence for that crime. *Harris v. State*, 897 N.E.2d 927, 928-29 (Ind. 2008). Therefore, the prior presumptive sentencing scheme applies. *Monroe*, 886 N.E.2d at 579.

[41] Warren is correct that "[a]fter a court has pronounced a sentence for a felony conviction, the court shall issue a statement of the court's reasons for selecting the sentence that it imposes." Ind. Code § 35-38-1-1.3. Indiana's case law has made clear that sentencing statements serve two primary purposes: (1) they guard against arbitrary and capricious sentencing; and (2) they provide an adequate basis for appellate review. *Anglemyer v. State,* 868 N.E.2d 482, 489 (Ind. 2007) (citing *Dumbsky v. State,* 508 N.E.2d 1274, 1278 (Ind. 1987)), *clarified*

*on reh'g,* 875 N.E.2d 218 (Ind. 2007). Under the prior presumptive sentencing scheme, when the trial court imposed a sentence other than the presumptive sentence, or imposed consecutive sentences where not required to do so by statute, our Supreme Court "would examine the record to ensure that the court explained its reasons for selecting the sentence it imposed." *Id.* A sentencing statement "must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence." *Id.* at 490. Before a trial court can impose a consecutive sentence, it must "(1) identify all significant aggravating and mitigating circumstances; (2) set forth the specific facts and reasons that lead the court to find the existence of each such circumstance; and (3) demonstrate that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence." *Harris,* 897 N.E.2d at 929. Ways in which a trial court may abuse its discretion include "failing to enter a sentencing statement at all . . . or the reasons given are improper as a matter of law." *Anglemyer,* 868 N.E.2d at 490-91.

[42]  "When sentencing a defendant on multiple counts, an Indiana trial judge may impose a consecutive sentence if he or she finds at least one aggravator. *Smylie v. State*, 823 N.E.2d 679, 686 (Ind. 2005). "Certainly, where a judge finds that aggravating and mitigating circumstances are in equipoise, we have required concurrent sentences, *Marcum v. State,* 725 N.E.2d 852, 863-64 (Ind. 2000), just as we have where the court has not found any aggravating circumstances at all." *Smylie*, 823 N.E.2d at 686. However, as our Supreme Court in *Smylie* found that "our statutes do not erect any target or presumption concerning

concurrent or consecutive sentences." *Id*. "Where the criminal law leaves sentencing to the unguided discretion of the judge there is no 'judicial impingement upon the traditional role of the jury.'" *Id*. (quoting *Blakely,* 542 U.S. at 309). In *Smylie*, our Supreme Court found there is "no language in *Blakely* or in Indiana's sentencing statutes that requires or even favors concurrent sentencing. *Smylie*, 823 N.E.2d at 686. Here, like in *Smylie*, the trial court's order that Warren serve consecutive terms after finding an aggravating factor—that he violated a position of trust—did not increase Warren's sentence above the statutory maximum for each offense.[7]

[43]     Here, both the trial court and the court on remand for resentencing entered a sentencing statement, and both courts found aggravating factors and mitigating factors. The trial court identified three aggravators: (1) Warren was in a position of trust with J.R.; (2) at least one incident occurred when J.R.'s minor sister was present; and (3) Warren violated a no contact order. *Warren I*, at *2. On remand, to avoid having to prove the existence of aggravating factors to a jury, the State argued only that Warren violated a position of trust. Each trial court found Warren's lack of prior criminal history as the sole mitigating

---

[7] On direct appeal, Bailey argued that the trial court violated *Blakely* when imposing Warren's sentence. Bailey recognized, however, that "*Smylie* held that *Blakely* did not impact a trial court's ability to impose consecutive sentences." *CR-25 Appellant's Br.* at 4 n.2. As such Bailey stated, "Warren has no constitutional challenge to the trial court's order that his sentence for Count II be served consecutive to his sentence for Count I." *Id*. (citing *Smylie*, 823 N.E.2d at 686). While this statement may have waived any complaints on appeal that the sentences should not run consecutively, the State does not assert that the issue has been waived. Therefore, we address this issue.

circumstance. On balance, both trial courts found that the aggravating circumstances outweighed the mitigating circumstances.

[44] Here, the only possible question regarding the propriety of the consecutive sentences is whether or not there were sufficient aggravating circumstances to support the decision to run the sentences consecutively. As we stated above, the trial judge initially found three aggravators at the sentencing phase: (1) Warren violated his position of trust with J.R.; (2) at least one incident occurred when J.R.'s minor sister was present; and (3) Warren violated a no contact order. *Warren I*, at *2. While the second and third aggravators "cannot support an enhanced sentence in the absence of a jury finding, [they] can be used to support the decision to impose consecutive sentences inasmuch as findings to support consecutive sentences can be made by the court." *Bryant v. State*, 841 N.E.2d 1154, 1157 (Ind. 2006) (citing *Smylie*, 823 N.E.2d at 686). Here, there were sufficient aggravating factors to enhance Warren's sentences and to run the sentences for two of the three Class A felonies consecutively. Koselke's failure to raise the issue that there was insufficient explanation for running the sentences consecutively, if error, did not prejudice Warren.

## IV. Resentencing after Post-Conviction Relief

[45] Finally, Warren contends that the post-conviction court abused its discretion when it did not remand the case for resentencing after vacating the convictions and sentences for the two Class D felonies. *Appellant's Br.* at 7. He maintains that, once the post-conviction court vacated those two counts, it "was required

to fashion an appropriate remedy." *Id*. at 48. Warren cites to our Supreme Court's reasoning in *Angleton v. State*, saying:

> A sentence supported by permissible grounds sufficient to persuade the reviewing court that the original sentencing decision would have been the same had the trial court not relied on the impermissible factor should be affirmed. When the appellate court cannot reach that conclusion with confidence, it should remand for a new sentencing or revise the sentence.

*Id*. at 47 (citing *Angleton v. State,* 686 N.E.2d 803, 815 (Ind. 1997)).

[46] Citing to our court's decision in *Sanjari v. State,* 981 N.E.2d 578, 583 (Ind. Ct. App. 2013), *trans. denied*, Warren maintains that remand was required here because "a trial court is likely to view individual sentences in a multi-count proceeding as part of an overall plan, a plan that can be overthrown if one or more of the convictions is reversed or reduced in degree." *Appellant's Reply Br.* at 28. Noting that the two Class D felony convictions were factors in the trial court's original sentencing decision, Warren argues, "[T]he post-conviction court should have ordered a new sentencing hearing if it could not conclude with confidence that the trial court's original sentencing decision would have been the same if Warren had only been sentenced on the remaining three counts." *Appellant's Br.* at 48 (citing *Angleton*, 686 N.E.2d 815). As Warren notes, the post-conviction court did not make any findings or conclusions pertinent to the question of whether Warren's aggregate sentence of seventy years would have been the same "had he only been sentenced on his remaining convictions." *Id*.

[47]    On his prior remand for resentencing, Warren offered as mitigating circumstances that he had no criminal history, was likely to respond well to short-term imprisonment and to take from prison the skills that "would allow him to not reoffend," had been diagnosed with PTSD after serving in the military, had been molested as a child; and was on G.P.S. monitoring for two years without offending. *CR-89 Tr. Vol. I* at 14-15. Warren also stated that, while in prison, he had completed various courses, "had no conduct reports," was in an apprenticeship program, attending church, and played and helped coach softball. *Id*. at 6. Explaining its reasons, the trial court rejected most of Warren's claims of mitigating circumstances but found that his lack of a prior criminal history was a mitigating factor. *Id.* at 18.

[48]    The trial court found as an aggravating circumstance that Warren was in a position of trust with J.R. and had violated that trust. *Id*. at 19. Balancing the aggravating circumstance against the mitigating circumstance, the trial court found that the aggravating factor outweighed the mitigating factor. *Id*. Reiterating that Warren was a father figure to J.R., the trial court sentenced him to thirty years aggravated by five years for a total of thirty-five years for each of the convictions for Class A felony child molesting. *Id*. The trial court stated that Warren's "violation of a position of trust to the victim justifie[d] consecutive sentencing and r[an] the sentence in Count [II] consecutive to the sentence in Count [I] for a total of seventy years. *Id*. The trial court ordered the thirty-five-year sentence for Count [III] to run concurrent with the seventy-year sentence. *Id*. The trial court also ordered Warren to serve three years for each

of the Class D felonies and ordered those sentences to run concurrent with each other and with the seventy-year sentence. *Id.*

[49]    While it is true that a trial court may view individual sentences in a multi-count proceeding as part of an overall plan, a plan that can be overthrown if one or more of the convictions is reversed or reduced in degree, that reasoning is not applicable in the instant case. Here, the trial court viewed the sentencing for the Class A felony counts as completely distinct from the sentencing for the Class D felony counts. At the initial sentencing hearing, the trial court ordered Warren to serve an aggregate sentence of eighty years—forty years for each of three Class A felonies, with two of those sentences running consecutive to each other and the remaining sentences, including three years for each of the Class D felonies, running concurrently. On remand for resentencing, the trial court ordered an aggregate sentence of seventy years by reducing the Class A felony sentences to thirty-five years each but again sentenced Warren to three years for each of the Class D felony convictions and ran those sentences plus the remaining Class A felony sentence concurrent with the sentence of seventy years. When given the opportunity on resentencing to change the sentences for the Class D felony convictions, the trial court ordered Warren to serve the exact same three-year sentences concurrently. Unlike the court in *Sanjari*, here, we are persuaded that the seventy-year aggregate sentence would have been the same even had the trial court not considered the impermissible convictions for Class D felony child solicitation. The post-conviction court did not abuse its

discretion when it chose not to remand for resentencing and, instead, ordered Warren to serve the aggregate seventy-year sentence.

[50] Here, there was no ineffective assistance of trial counsel and no ineffective assistance of appellate counsel on either direct appeal or on appeal following resentencing. Furthermore, the post-conviction court did not abuse its discretion when it affirmed Warren's sentence, instead of remanding it for resentencing

[51] Affirmed.

Bailey, J., and Mathias, J., concur.